1

2

3

4                UNITED STATES DISTRICT COURT

5               NORTHERN DISTRICT OF CALIFORNIA

6                                  )
7                                  )
   LIFTED RESEARCH GROUP, INC., a  )   No. C-08-4497 SC
8  California corporation,         )
                                   )   DEFAULT JUDGMENT
9              Plaintiff,          )
                                   )
10                                 )
        v.                         )
11                                 )
                                   )
12 MUHAMMAD R. SALEM a/k/a RUBIN SALEM)
   d/b/a RUBIN'S IMPORTS d/b/a RUBIN'S)
13 TATTOO d/b/a RUBIN'S ONE STOP    )
   FASHION and DOES 1-10,          )
14                                 )
               Defendants.         )
15 _____)

16

17 **I.**   **INTRODUCTION**

18       Plaintiff Lifted Research Group, Inc. ("Plaintiff" or "LRG")

19 brought this action against Defendant Muhammad R. Salem, aka Rubin

20 Salem ("Defendant" or "Salem").   LRG asserts that Rubin infringed

21 four of its trademarks and one copyright, by selling and offering

22 for sale products that used LRG's marks and design.   Compl.,

23 Docket No. 1, ¶ 20.   Salem was served with the Summons and

24 Complaint on October 28, 2008, but failed to respond.   Docket No.

25 12.  On January 6, 2009, the Clerk entered default against Salem.

26 Docket No. 16.

27       Now before the Court is LRG's Motion for Default Judgment

28 ("Motion").   Docket No. 19.   Salem has not opposed the Motion.

United States District Court
For the Northern District of California

1    For the reasons stated herein, the Court GRANTS LRG's Motion and

2    AWARDS LRG $104,000.00 in damages, $4725.00 in attorneys' fees and

3    $425.00 in costs.   The Court further GRANTS LRG's request for a

4    permanent injunction.

5

6    II.  **BACKGROUND**

7         LRG is the owner of four trademarks (Reg. Nos. 2,513,951;

8    2,633,832; 2,958,307; 2,506,859) ("Marks") and one design

9    copyright (Reg. No. VA-1-348-151) ("Copyright"), which it uses on

10   various clothing products.   See Compl. ¶¶ 9, 11; Request for

11   Judicial Notice ("RJN") Ex. 1, 2.[1]   Salem is an individual doing

12   business in San Francisco, where he operates a clothing store and

13   tattoo parlor ("Rubin's Imports").   Compl. ¶ 5.   Salem is not an

14   infant or incompetent, and is not on active military status.   Id.

15   ¶ 6; Holmes Decl. Ex. 1.[2]

16        LRG has never assigned or licenced any rights in the Marks or

17   Copyright to Salem.   Compl. ¶ 10.   LRG alleges that Salem is

18   advertising, distributing, offering for sale, and selling clothing

19   products that bare its Marks and Copyright without LRG's

20   permission.   Id. ¶ 19.   LRG's representatives visited Rubin's

21   Imports on two occasions.   On September 10, 2007, private

22

23        [1] LRG submitted a request for judicial notice in support of
     its Motion.   Docket No. 26.   The request includes copies of its
24   Marks from the Trademark Principal Register and a certificate of
     registration for its Copyright.   The Court may take judicial notice
25   of such documents.   See Metro Publ'g, Ltd. v. San Jose Mercury
     News, 987 F.2d 637, 640-41 (9th Cir. 1993).
26
         [2] Jason Holmes, private investigator for LRG, submitted a
27   declaration in support of the Motion.   Docket No. 24.

28
                                    2

investigator Glenn Gomez ("Gomez") visited the shop and counted

ten pairs of jeans, twenty shirts, and twenty sweatshirts, each

baring LRG's Marks or Copyright.  Gomez Decl. ¶ 5.[3]  He purchased

for $50 a pair of jeans that was marked for $125.  Id.  Gomez then

sent these jeans to LRG employee Michael Fitzsimons

("Fitzsimons"), who identified them as counterfeit.  Fitzsimons

Decl. ¶ 12.[4]  On October 8, 2007, counsel for LRG sent a cease and

desist letter with a draft complaint to Rubin's Imports.  Gaffigan

Decl. Ex. 1 ("First C&D Ltr.").[5]

On November 13, 2007, private investigator Hector Moya

("Moya") visited the shop and counted seventy pairs of jeans and

twelve jackets that bore LRG's Marks or Copyright, which he

identified as counterfeit.  Moya Decl. ¶ 6.[6]  While at Rubin's

Imports, Moya also served an employee with another cease and

desist letter, and requested that the merchandise be surrendered.

Id. ¶¶ 5, 7.  The employee called Salem on the phone, and then

signed a receipt acknowledging the sale of counterfeit merchandise

and promising to surrender the merchandise on November 15, 2007.

Id.  Salem never surrendered the counterfeits.  Id. ¶ 7.

LRG alleges that Salem's infringement is continuing.  Mot. at

_____

[3] Gomez submitted a declaration in support of the Motion. Docket No. 23.

[4] Fitzsimons submitted a declaration in support of the Motion. Docket No. 22.

[5] Stephen Gaffigan, counsel for LRG, submitted a declaration in support of the Motion.  Docket No. 21.

[6] Moya submitted a declaration in support of the Motion. Docket No. 25.

3

25.   It brought this suit alleging (1) trademark counterfeiting and infringement in violation of § 32 of the Lanham Act, 15 U.S.C. § 1114; (2) false designation of origin in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); and (3) willful copyright infringement in violation of 17 U.S.C. § 501.  Compl. ¶¶ 35-54. Salem has failed to answer or appear, and LRG now moves for a default judgment.

**III.  LEGAL STANDARD**

After entry of default, the Court may enter a default judgment.  Fed. R. Civ. P. 55(b)(2).  Its decision whether to do so, while "discretionary," Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980), is guided by several factors.

As a preliminary matter, the Court must "assess the adequacy of the service of process on the party against whom default is requested."  Bd. of Trs. of the N. Cal. Sheet Metal Workers v. Peters, No. 00-0395, 2000 U.S. Dist. LEXIS 19065, at *2 (N.D. Cal. Jan. 2, 2001).

If the Court determines that service was sufficient, it may consider the following factors in its decision on the merits of a motion for default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  "The

United States District Court
For the Northern District of California

general rule of law is that upon default the factual allegations
of the complaint, except those relating to the amount of damages,
will be taken as true.  Geddes v. United Fin. Group, 559 F.2d 557,
560 (9th Cir. 1977).  Therefore, for the purposes of this Motion,
the Court accepts as true the facts as presented in the Complaint.

**IV.   DISCUSSION**

    **A.   Service of Process**

    Service of process against Salem was adequate.  Federal Rule
of Civil Procedure 4(e)(1) allows service upon an individual
pursuant to state procedures for service.  California law allows a
Summons to be left at a person's usual place of business in the
presence of a person apparently in charge, and by thereafter
mailing the Summons to that address.  See Cal. Civ. Proc. Code
§ 415.20.  Salem was so served on October 28, 2008.  See Proof of
Service ("POS"), Docket No. 12, at 1.  The Summons was left with
Sammy Abu, the store manager at Rubin's Imports, at 2:41 p.m.  Id.
The Summons was then mailed to Rubin's Imports.  Id. at 4.

    The Court notes a discrepancy on the address listed on the
POS.  The POS states that the Summons was delivered and mailed to
1941 Mission Street in San Francisco.  Id. at 1, 4.  However the
correct address of Rubin's Imports appears to be 1943 Mission
Street.  See Compl. ¶ 5; Moya Decl. Ex. 2.[7]  The Court concludes
that this discrepancy is immaterial for several reasons.  First, a

_____

    [7] The cease and desist letter and draft complaint that were
mailed to Salem on October 8, 2007, were properly addressed to
Rubin's Imports at 1943 Mission Street.  See First C&D Ltr. at 1.

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

photograph submitted by Moya indicates that 1941 Mission Street is immediately adjacent to 1943 Mission Street, and clearly not a separate place of business.  Moya Decl. Ex. 2.  As the POS indicates that the Summons was left with the store manager of Rubin's Imports, POS at 1, there is little doubt that it was left in the correct location.  Second, LRG alleges that 1941 Mission Street is actually Salem's personal residential address.  Compl. ¶ 5.  Therefore even if the Summons was mailed to the wrong address, it would have likely reached Salem.  The Court finds that in spite of the discrepancy on the POS, there was either no error or harmless error, and service was reasonably calculated to give Salem actual notice of this suit.

**B.   Merits of Motion**

Accepting the allegations in the Complaint as true, as it must, the Court finds that the <u>Eitel</u> factors favor default judgment.

1.   <u>Prejudice</u>

LRG would be prejudiced absent entry of default judgment.  If Salem is allowed to continue selling counterfeit goods that infringe on LRG's Marks and Copyright, LRG will suffer irreparable harm to its goodwill and reputation for producing high-quality goods.  <u>See</u> Compl. ¶ 21-22.  Without the entry of a default judgment, LRG would not have another remedy for these harms.  Such a situation qualifies as prejudice.  <u>See</u> <u>PepsiCo, Inc. v. Cal. Sec. Cans</u>, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

2.   <u>Merits of LRG's Substantive Claims</u>

To prevail on its claims under the Lanham Act, LRG must

6

**United States District Court**
For the Northern District of California

1    establish that (1) it owns a valid and protectable trademark, and

2    (2) Salem's use of the trademark is likely to cause consumer

3    confusion.[8]   See Applied Info. Scis. Corp. v. eBay, Inc., 511 F.3d

4    966, 969 (9th Cir. 2007).   LRG has submitted evidence that it

5    holds a valid and protectable right to the Marks.   RJN Ex. 1.   By

6    default Salem has admitted this.   Salem's use of these Marks or

7    substantially similar marks is likely to cause consumer confusion,

8    as consumers will be likely to believe that Salem's merchandise is

9    produced by or associated with LRG.   Mot. at 4-5; see Acad. of

10   Motion Picture Arts & Scis. v. Creative House Promotions, Inc.,

11   944 F.2d 1446, 1456 (9th Cir. 1991) ("When one party knowingly

12   adopts a mark similar to another's, reviewing courts presume that

13   the defendant will accomplish its purpose, and that the public

14   will be deceived.").   The Court concludes that LRG's claims under

15   the Lanham Act are meritorious.

16       LRG's claim for infringement of its Copyright is also

17   meritorious.   To prevail on a claim for copyright infringement,

18   LRG must establish ownership of a valid copyright and unauthorized

19   copying of original elements of the protected work by Salem.   See

20   Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361

21   (1991).   LRG has established ownership of the Copyright.   RJN Ex.

22   2.   LRG has identified violations of its rights by Salem, which

23

24       [8] These factors apply to both LRG's claim for false
     designation of origin under 15 U.S.C. § 1125(a), and for trademark
25   infringement under 15 U.S.C. § 1114.   The elements for these claims
     are the same.   See Brookfield Commc'ns. v. W. Coast Entm't Corp.,
26   174 F.3d 1036, 1046 n.6 (9th Cir. 1999).   LRG acknowledges that it
     is not entitled to double recovery under both of these sections.
27   Mot. at 14.

28
                                      7

**United States District Court**
For the Northern District of California

1    Salem has admitted by default.  See Compl. ¶ 51; Fitzsimons Decl.

2    ¶ 12; Moya Decl. ¶ 6.

3         The Court further finds that Salem's use of the Marks and

4    Copyright was willful.  LRG warned Salem by letter that his use

5    was infringing on LRG's Marks and Copyright.  See First C&D Ltr.

6    Salem continued to distribute counterfeit goods after this time.

7    See Moya Decl. ¶ 6.  Salem's employee signed a receipt

8    acknowledging that the goods were counterfeit.  Id. Ex. 1.

9    Moreover, LRG has alleged that Salem's infringement was willful,

10   Compl. ¶ 27, and Salem has admitted this charge of willfulness by

11   default.

12        3.   Sufficiency of the Complaint

13        LRG properly alleges the necessary elements for its Lanham

14   Act claims and its claim for copyright infringement.  The

15   Complaint identifies the Marks and Copyright in question,

16   identifies LRG as the owner of the rights thereunder, articulates

17   a probability of confusion, and describes how Salem is violating

18   its rights.  See Compl. ¶¶ 9-10, 19, 23, 29.  Accordingly, LRG's

19   Complaint is sufficient.

20        4.   Amount of Money at Stake

21        LRG seeks well over $100,000, plus attorney fees and costs.

22   Mot. at 17.  While Salem would suffer from entry of judgment

23   against him, these damages are authorized by statute.  See 15

24   U.S.C. § 1117; 17 U.S.C. § 504(c).  LRG also alleges that Salem's

25   infringement was willful, which substantially raises the maximum

26   recovery available.  See id.; Compl. § 27.  Finally, LRG only

27   presents evidence based on what was in Rubin's Imports during its

28                                   8

visits, and it is likely that Salem committed additional acts of infringement not considered by this award.  The Court concludes that the sum of money at stake favors LRG.

5.   <u>Possibility of a Dispute Concerning Material Facts</u>

There is little possibility of a dispute concerning material facts.  LRG has demonstrated that it holds the rights to its Marks and Copyright, and that these rights have not been assigned to Salem.  RJN Ex. 1, 2; Compl. ¶¶ 9-10.  Further, LRG has provided adequate evidence of Salem's unauthorized distribution of counterfeit goods that infringe on LRG's rights.  <u>See</u> Fitzsimons Decl. ¶ 12; Moya Decl. ¶ 6.  This factor also favors default judgment.

6.   <u>Whether Default Was Due to Excusable Neglect</u>

Salem's failure to act here is not a case of excusable neglect.  Prior to bringing suit, LRG contacted Salem with cease and desist letters on two separate occasions, the first of which threatened suit and included a draft complaint.  <u>See</u> First C&D Ltr.; Moya Decl. ¶¶ 5, 7.  When that failed, LRG filed suit on September 25, 2008.  <u>See</u> Compl.  Salem was properly served with the Summons and Complaint, <u>see</u> POS, but did not respond.  In fact, LRG even served Salem with notice of the instant Motion, although such notice was not necessary.  <u>See</u> Certificate of Service, Docket No. 28; Fed. R. Civ. P. 55(b)(2).  Because Defendant's failure to participate in this litigation cannot be considered excusable neglect, this factor favors entry of default judgment.

7.   <u>Strong Policy Favoring Decision on the Merits</u>

While it is preferable to decide cases on the merits whenever

United States District Court
For the Northern District of California

1   possible, this preference is not dispositive.  Where a party fails

2   to defend against a complaint, as Salem has failed here, Rule 55

3   authorizes the Court to enter default judgment.  <u>Kloepping v.</u>

4   <u>Fireman's Fund</u>, No. 94-2684, 1996 U.S. Dist. LEXIS 1786, at *10

5   (N.D. Cal. Feb. 14, 1996).

6        In light of the <u>Eitel</u> factors discussed above, the Court

7   finds that entry of default judgment is appropriate.

8        **C.   Remedy**

9        LRG requests monetary damages, fees and costs, and equitable

10  relief in the form of a permanent injunction.

11            1.   <u>Damages</u>

12       LRG seeks statutory damages under the Lanham Act.  Mot. at

13  10-14.  Pursuant to 15 U.S.C. § 1117, a plaintiff can either seek

14  actual or statutory damages under the Lanham Act.  As Salem has

15  not participated in this litigation, actual damages are difficult

16  or impossible to determine.  In this situation, the remedy of

17  statutory damages under 15 U.S.C. § 1117(c) is appropriate.  <u>See</u>

18  <u>Microsoft Corp. v. McGee</u>, 490 F. Supp. 2d 874, 882 (S.D. Ohio

19  2007).  The Court has discretion to set the amount of damages

20  between $500 and $100,000 per counterfeit mark per type of good

21  sold, or if the infringement is willful, up to $1,000,000 per

22  counterfeit mark per type of good.  15 U.S.C. § 1117(c).[9]

23  _____

24       [9] On October 13, 2008, this section was amended to increase
    the range of damages from $1000 to $200,000, with increased
    penalties of up to $2,000,000 for willful violations.  Pub. L. No.
25  110-403, 122 Stat. 4256, 4259 (2008).  This Court agrees with the
    conclusion reached by a District Court for the District of
26  Columbia, which recently considered an almost identical action
    brought by LRG, that this amendment was not intended to operate
27  retroactively.  <u>Lifted Research Group, Inc. v. Behdad, Inc.</u>, 591 F.

28                                  10

United States District Court

For the Northern District of California

1    As other courts have observed, 15 U.S.C. § 1117(c) provides

2    no guidelines for determining an appropriate award, and is limited

3    by what the Court considers just.  See, e.g., Tiffany (NJ) Inc. v.

4    Luban, 282 F. Supp. 2d 123, 124-25 (S.D.N.Y. 2003).  LRG has

5    suggested that the Court start with a base award of $21,000.[10]

6    Mot. at 12-13.  According to LRG, the Court should award this

7    amount for each Mark (of which there are four) per type of good

8    (of which LRG has identified four:  jeans, shirts, sweatshirts,

9    and jackets), resulting in statutory damages of $336,000.  Id.

10    The Court recognizes that the $21,000 base that LRG

11    recommends is substantially higher than the minimum, but finds

12    this to be appropriate, given that Salem's infringement was

13    willful.  Moreover, Salem has likely sold numerous goods that LRG

14    did not have an opportunity to document, and Salem should not

15    profit from the lack of information caused by his refusal to

16    participate in this litigation.  The Court therefore sets the base

17    damages at $21,000.  However, LRG has only established that Salem

18    sold four types of counterfeit goods, without alleging how many

19    Marks each type of good infringed upon.  LRG has neither alleged

20    nor proven that each type of good infringed on each Mark -- it has

21    merely alleged that each type of good was "LRG branded."  See,

22

23    Supp. 2d 3, 8 n.2 (D.D.C. 2008).  The Court therefore uses the
limits set out before the amendment.

24    [10] LRG reaches this figure by multiplying the number of jeans
in Rubin's Imports (70) by the price that Gomez paid for those
25    jeans ($50), to reach $3500.  Then it urges the Court to treble
this figure because infringement was willful (which is what the
26    Court would do if it were calculating actual damages per 15 U.S.C.
§ 1117(a)-(b) instead of statutory damages under subsection (c)),
27    and double it again for deterrence purposes.  Mot. at 13.

28

**United States District Court**
For the Northern District of California

e.g., Moya Decl. ¶ 6; Compl.¶20.  The Court will not speculate as to which products bore which or how many Marks.  In the absence of any evidence or clear allegations to the contrary, the Court will base its calculation on the minimum of what LRG has fairly proven: that each type of good bore at least one of LRG's marks.  As such, the Court will only multiply the $21,000 award by four (the number of goods).  This is necessary to prevent LRG from, for example, recovering four times for an infringing shirt that may have only infringed on a single Mark.  Statutory damages are set at $84,000.00 for the Lanham Act claims.  The Court concludes that this total amount is just and commensurate with similar awards in similar suits.  See, e.g., Nike, Inc. v. B&B Clothing Co., No. 06-2828, 2007 U.S. Dist. LEXIS 37195, at *8 (E.D. Cal. May 21, 2007) (awarding $100,000 in apparel infringement default judgment against small business owner).

    LRG also seeks damages for violation of the Copyright Act.  An award of damages under the Lanham Act does not preclude an award for damages under the Copyright Act.  See Nintendo of Am., Inc. v. Dragon Pac. Int'l, 40 F.3d 1007, 1011 (9th Cir. 1994).  As with trademark infringers under the Lanham Act, an infringer of a copyright is liable for either the plaintiff's actual damages or statutory damages under the Copyright Act.  See 17 U.S.C. § 504.  A plaintiff seeking statutory damages may recover between $750.00 and $30,000.00 for all infringements of a copyrighted work, or up to $150,000 for a willful infringement.  17 U.S.C. § 504(c).  LRG has suggested statutory damages of $30,000.  Mot. at 15.  The Court finds this figure to be too high.  Given the willfulness of

Salem's violation, the Court finds that an award of $20,000 is appropriate and consistent with the damages set for the Lanham Act violations.   Statutory damages are set at $20,000 for the Copyright Act claim.

        2.   <u>Fees & Costs</u>

LRG also seeks to recover their costs of $350.00 in filing fees and $75.00 for service of process, for a total of $425.00. <u>See</u> Mot. at 17.   They also seek to recover $4725.00 in attorney fees and $2120.37 in investigative fees.   <u>Id.</u> at 16.

LRG seeks to recover attorney fees and costs under 17 U.S.C. § 505 and 15 U.S.C. § 1117.   Mot. at 15.   The Court finds this request to be appropriate under 17 U.S.C. § 505 (for the Copyright claim), but not under 15 U.S.C. § 1117 (for the Lanham Act claim). LRG cannot recover under the Lanham Act because the provisions that allow recovery of attorneys' fees only apply if plaintiffs choose to pursue actual damages under 15 U.S.C. § 1117(a)-(b). There is no fee provision if plaintiffs choose, as LRG has chosen here, to pursue statutory damages under 15 U.S.C.   § 1117(c).   <u>See</u> <u>K&N Eng'g, Inc. v. Bulat</u>, 510 F.3d 1079, 1082 (9th Cir. 2007) (finding that district court abused its discretion by awarding attorneys' fees where plaintiffs sought statutory damages under § 1117(c)).   Unlike the Lanham Act, the Copyright Act contains a separate provision for fees, and the award of fees is not tied to whether the plaintiff chooses to seek actual or statutory damages. <u>Compare</u> 15 U.S.C. § 1117 <u>with</u> 17 U.S.C. § 505.

Nevertheless, the Court grants LRG's request for attorneys' fees in full.   Where copyright claims arise from the same course

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

of conduct as non-copyright claims, then the claims may be related for the purpose of attorneys' fees under the Copyright Act.  See Traditional Cat Ass'n v. Gilbreath, 340 F.3d 829, 833 (9th Cir. 2003); Berry v. Haw. Express Serv., No. 03-385, 2007 U.S. Dist. LEXIS 15077, at *19-20 (D. Haw. Mar. 2, 2007).  The Court finds that LRG's Lanham Act claims are sufficiently related to its Copyright Act claims.  LRG made the same arguments for its Lanham Act claims as for its Copyright claims, and the underlying facts were the same.  See generally Mot.  Indeed, it would be almost impossible to differentiate the work done on LRG's different claims.  Cf. Gracie v. Gracie, 217 F.3d 1060, 1069 (9th Cir. 2000) (stating that recovery for non-Lanham Act claims would be permissible under Lanham Act if work would be impossible to differentiate).  Therefore, even though LRG cannot independently recover fees for its Lanham Act claims, LRG may recover fees for these as "related claims" under 17 U.S.C. § 505.

The Court finds that the declarations submitted by LRG sufficiently describe the work done, and finds LRG's request to be compensated for only 13.5 hours of work to be reasonable.  See Gaffigan Decl. ¶¶ 4-9; Kearns Decl. ¶¶ 8-13.[11]  The Court therefore GRANTS LRG's request for attorneys' fees of $4725.00.  It further GRANTS LRG's request for costs of $425.00.

The Court DENIES LRG's request for investigative fees.  Moya simply states his total fee without providing any itemization or revealing the amount of time spent investigating LRG's claims.

---

[11] Anne Kearns, counsel for LRG, submitted a declaration in support of the Motion.  Docket No. 20.

14

United States District Court

For the Northern District of California

1    Moya Decl. at 8.  The Court finds this description of work to be

2    inadequate, and it is unable to assess the reasonableness of the

3    request.

4              3.   Injunctive Relief

5         LRG has demonstrated that its rights in the Marks and

6    Copyright have been, and continue to be, violated by Salem.  In

7    such circumstances, the Court is authorized by the Copyright Act

8    to issue a permanent injunction to prevent or restrain further

9    infringement.  See 17 U.S.C. § 502(a); Sega Enters. Ltd. v.

10   MAPHIA, 948 F. Supp. 923, 940 (N.D. Cal. 1996) ("Generally, a

11   showing of copyright infringement liability and the threat of

12   future violations is sufficient to warrant a permanent

13   injunction.").  Similarly, injunctive relief is appropriate to

14   prevent trademark infringement under the Lanham Act.  See 15

15   U.S.C. § 1116(a).  Injunctive relief is appropriate in trademark

16   and copyright actions resulting in default judgment.  See e.g.,

17   Philip Morris U.S.A. Inc. v. Castworld Prods., 219 F.R.D. 494, 502

18   (C.D. Cal. 2003) (finding injunctive relief appropriate in suit

19   brought under Lanham Act); Jackson v. Sturkie, 255 F. Supp. 2d

20   1096, 1103 (N.D. Cal. 2003) ("[D]efendant's lack of participation

21   in this litigation has given the court no assurance that

22   defendant's infringing activity will cease.  Therefore, plaintiff

23   is entitled to permanent injunctive relief.").

24        LRG is entitled to a broad injunction, not limited to the

25   identified Marks and Copyright.  In addition to the Marks and

26   Copyright at issue in this suit, the injunction shall extend to

27   all marks and copyrights owned by LRG or to which the LRG is the

28                                 15

United States District Court
For the Northern District of California

1  licensee of exclusive rights.   See e.g., Picker Int'l Corp. v.

2  Imaging Equip. Serv., Inc., 931 F. Supp. 18, 45 (D. Mass. 1995),

3  aff'd sub nom Picker Int'l, Inc. v. Leavitt, 94 F.3d 640 (1st Cir.

4  1996).   Furthermore, the injunction shall prohibit Salem from

5  infringing any rights in any marks or copyrights which LRG may

6  acquire in the future.   See Sony Music Entm't, Inc. v. Elias, No.

7  CV 03-6387, 2004 U.S. Dist. LEXIS 30385, at *13-14 (C.D. Cal. Jan.

8  20, 2004) (enjoining infringement of existing and future works).

9

10  **V.    CONCLUSION**

11       For the foregoing reasons, the Court GRANTS LRG default

12  judgment.   The Court hereby AWARDS LRG $104,000.00 in damages,

13  $4725.00 in attorneys' fees and $425.00 in costs.   The Court also

14  GRANTS LRG's request for a permanent injunction.

15       Salem, his respective officers, agents, servants, employees

16  and attorneys, and all persons in active concert and participation

17  with him are hereby ENJOINED from:

18       1.    manufacturing or causing to be manufactured, importing,

19             advertising, or promoting, distributing, selling or

20             offering to sell counterfeit and infringing goods using

21             LRG Marks and/or the work protected by LRG Copyright;

22       2.    using LRG Marks and/or the work protected by LRG

23             Copyrights in connection with the sale of any

24             unauthorized goods;

25       3.    using any logo, and/or layout which may be calculated to

26             falsely advertise the services or products of Salem,

27             Rubin's Imports, Rubin's Tattoo, Rubin's One Stop

28                                    16

United States District Court
For the Northern District of California

Fashion and/or any other business, as being sponsored by, authorized by, endorsed by, or in any way associated with LRG;

4. falsely representing himself as being connected with LRG, through sponsorship or association;

5. engaging in any act which is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of Salem, Rubin's Imports, Rubin's Tattoo, Rubin's One Stop Fashion and/or any other business, are in any way endorsed by, approved by, and/or associated with LRG;

6. using any reproduction, counterfeit, copy, or colorable imitation of LRG Marks and/or the work protected by LRG Copyrights in connection with the publicity, promotion, sale, or advertising of any goods sold by Salem, Rubin's Imports, Rubin's Tattoo, Rubin's One Stop Fashion and/or any other business, including, without limitation, jeans, shirts, sweatshirts and jackets;

7. affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent goods by Salem, Rubin's Imports, Rubin's Tattoo, Rubin's One Stop Fashion and/or any other business, as being those of LRG, or in any way endorsed by LRG, or offering any such goods in commerce;

8. secreting, destroying, altering, removing, or otherwise dealing with the unauthorized products or any books or

17

United States District Court
For the Northern District of California

records which contain any information relating to the importing, manufacturing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, renting or displaying of all unauthorized products which infringe the LRG Marks and/or the work protected by the LRG Copyright; and

9.   effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth above.

IT IS SO ORDERED.

Dated: May 15, 2009

                                        _____
                                        UNITED STATES DISTRICT JUDGE

18